UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE MYERS,<br><br>    Plaintiff,<br><br>    vs.<br><br>ALLSTATE INDEMNITY CO. et al,<br><br>    Defendants. | Case No. SACV 14-406-JLS (DFMx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 20)** |

1

**I.  INTRODUCTION**

Before the Court is a Motion for Summary Judgment filed by Defendant Allstate Indemnity Company. (Mot., Doc. 20.) Plaintiff Diane Myers opposed, and Allstate replied. (Opp., Doc. 24; Reply, Doc. 25.) Having read and considered the papers and heard oral argument, the Court GRANTS the Motion.

**II.  BACKGROUND**

On April 3, 2012, Plaintiff Diane Myers was involved in a car accident.[1] (Statement of Uncontroverted Facts, Doc. 20-1, ¶ 2.) Defendant Allstate Indemnity Company had previously issued an auto insurance policy to Myers. (Id. ¶ 1.) The policy provided underinsured motorist coverage of $100,000 per person and medical payments coverage of $5,000. (Id.) Allstate paid the $5,000 medical payments coverage limit for Myers' medical expenses. (Id. ¶ 3.)

On January 7, 2013, Myers sent a letter to Allstate demanding arbitration under the underinsured motorist coverage provision of the policy.[2] (Id. ¶ 4.)

On January 24, 2013, Myers provided Allstate with documents showing she had received the $15,000 policy limit from the at-fault driver. (Id. ¶ 5.)

Also on January 24, 2013, Myers sent a letter to Allstate stating that she had suffered shoulder, knee, lower back, and rib injuries in the accident and demanding that

---

[1] Unless otherwise noted, all facts referred to in this section are undisputed and any objections thereto are overruled. The Court addresses Allstate's objections to the Zwick Declaration below.

[2] The policy provided in relevant part that "If you and we disagree on your right to receive any damages or on the amount of damages, then upon written request of either party, the disagreement will be settled by a single neutral arbitrator." (SUF ¶ 4.)

Allstate pay her $250,000 policy limit, less the $15,000 she received from the at-fault driver's insurer. (Id. ¶¶ 5-6.)

On January 30, 2013, Allstate sent a letter to Myers' counsel asking him to have Myers sign and return a medical authorization. (Id. ¶ 8.) Myers' counsel did not return the medical authorization.[3] (Id.)

In February 2013, Allstate asked Myers to provide various missing medical records. (Id. ¶ 9.)

In March 2013, Myers provided the medical records Allstate had requested. (Id. ¶ 10.) In one, a doctor who had evaluated Myers' shoulder stated that her symptoms were "not dramatic enough to necessitate surgical consideration." (Id. ¶ 10.)[4] The records did not contain any opinion that Myers' back or rib pain had been caused by the accident. (Id. ¶ 12.) Moreover, the records reflected three pre-existing conditions: (1) an April 2012 physical therapist report documented her lower back pain as preexisting, (2) a knee MRI showed a degenerative condition, and (3) a shoulder MRI showed rotator cuff "tendinitis" and other degenerative changes.[5] (Id.)

Also in March 2013, Myers' attorney sent a letter to Allstate stating that Myers would need knee surgery. (Id. ¶ 11.)

Also in March 2013, Allstate made a settlement offer to Myers for $45,500, less the $15,000 paid by the at-fault driver's insurer and $5,000 paid by Allstate under the medical payments coverage. (Id. ¶ 13.)

---

[3] Although Myers disputes these facts' import, she does not dispute this fact. (*See* Corrected Statement of Genuine Issues of Fact, Doc. 26, ¶ 8.)
[4] Myers again disputes this fact's import but not its accuracy. (SGIF ¶ 10.)
[5] Myers disputes this fact's import but not its accuracy. (SGIF ¶ 12.)

In the course of handling Myers' claim, Allstate retained a board-certified orthopedic surgeon to provide an opinion on Myers' injuries.[6]  (Id. ¶ 14.)

In April 2013, Allstate retained counsel for the arbitration.  (Id. ¶ 15.)  Allstate's counsel served written discovery on Myers.  (Id.)  Myers responded to that discovery request in late June.  (Id.)

In July 2013, the parties agreed on an arbitrator.  (Id. ¶ 17.)

In August 2013, Allstate obtained medical records it had subpoenaed from Myers' medical providers.  (Id. ¶ 16.)  These records showed that from 2008 to 2011, Myers had been treated for chronic lower back pain and head, leg, shoulder, and rib pain.  (Id.)  The records also showed that Myers had "received epidural injections in her back and had a lump in her epigastric region."[7]  (Id.)

Also in August 2013, Myers agreed to a December 2013 arbitration hearing date.  (Id. ¶ 17.)  Myers does not dispute this fact but notes that on August 19, 2013, her counsel wrote a letter to Allstate's claims supervisor expressing "frustration[] that we now have an Arbitration date for December of 2013 . . . because it is so far away and there is no reason why they can't have it in October or September because I contacted [the arbitrator's] office and he is available."  (SGIF ¶ 17.)  Myers' counsel also "requested that Allstate move faster in getting an [independent medical exam] done on my client" because "there was no reason whatsoever that that is being delayed and why hasn't it been done before now."  (Id.)

In October 2013, Allstate's retained orthopedic surgeon examined Myers, reviewed

---

[6] Myers disputes this fact's import but not its accuracy.  (SGIF ¶ 14.)
[7] Myers disputes this fact's import but not its accuracy.  (SGIF ¶ 16.)

her medical records, and prepared a report in which he stated (1) Myers' lower back pain was unrelated to the accident, (2) Myers' left knee had "sustained a contusion" but that it would "not require any future formal treatment . . . as it relates to the motor vehicle accident," (3) Myers should have completed physical therapy for her shoulder and the surgery she had undergone "was performed prematurely and aggressively," and (4) Myers did not suffer a rib dislocation as a result of the accident, although she may have had rib bruising. (SUF ¶ 18.)

In November 2013, Allstate raised its valuation of Myers' claim to $73,000, subject to the $20,000 in offsets described above. (Id. ¶ 19.) This amount covered all of Myers' claimed medical expenses plus more than $20,000 for pain and suffering. (Id.)

In her December 11, 2013 arbitration brief, Myers demanded $66,438 for "future" epidural injections in her lower back for a period of four years. (Id. ¶ 20.) She had not previously made this demand to Allstate, and no doctor submitted documentation to Allstate showing that her lower back injury had been caused by the accident. (Id.)

On December 13, 2013, the arbitration took place. (Id. ¶ 21.)

On January 9, 2014, the arbitrator issued his award. (Id.) The arbitrator disallowed Myers' demand for future knee surgery. (Id.) However, the arbitrator awarded Myers $67,938 for "future medicals" (including $66,438 for future lower back epidural injections), $175,000 in general damages for a "deformed displaced" rib, and $54,717 in medical expenses for a total award of $297,655. (Id.) This award was reduced to Myers' policy limit of $250,000, or $230,000 after the offset described above. (Id.)

In January 2014, Allstate paid the arbitration award. (SUF ¶ 22.)

On February 13, 2014, Myers filed suit against Allstate in Orange County Superior

5

Court asserting a single claim for breach of the implied covenant of good faith and fair dealing. (Compl., Doc. 1, Ex. A.) On March 17, 2014, Allstate removed the case to this Court. (Notice of Removal, Doc. 1.)

In her Complaint, Myers alleges that following her January 2013 arbitration demand, Allstate imposed "continual, needless and unreasonable delays" even though she "was undergoing considerable financial hardship because she [was] unable to work and was having to pay out of pocket medical expenses." (Compl. ¶ 16.) She alleges that this caused her to endure "great mental anguish, humiliation and feelings of desperation and helplessness while [her] repeated demands for timely arbitration were ignored by Allstate." (Id. ¶ 19.) Myers seeks both general and punitive damages. (Id. ¶ 21.)

Allstate now moves for summary judgment on Myers' claim. (Mot. at 2.) In the alternative, Allstate seeks partial summary judgment on Myers' punitive damages request. (Id.)

## III.   LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1079-80 (9th Cir. 2004) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(c))). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'" *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" when its resolution "'might affect the outcome of the suit under the governing law.'" *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of identifying "'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Federal Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (quotation marks and citation omitted). To defeat a motion for summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Furthermore, the non-moving party may not rely on "conclusory allegations" or "mere speculation." *Rogers v. Giurbino*, No. 11cv0560, 2013 WL 692961, at *14 (S.D. Cal. Feb. 26, 2013). Rather, the "non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 252).

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant. *See Anderson*, 477 U.S. at 255. However, "'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.

## IV. DISCUSSION

### A. Bad Faith Claim

Allstate contends it is entitled to summary judgment on Myers' bad faith claim because there was a genuine dispute about the value of her underinsured motorist claim.

It is well established that "an insurer does not act in bad faith so long as a 'genuine dispute' exists over an insured's coverage." *Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 2d 1154, 1160 (C.D. Cal. 2007) (citing *Rappaport-Scott v. Interinsurance Exchange of Auto. Club*, 146 Cal. App. 4th 831, 837 (2007)). A genuine dispute exists where "the insurer's position is maintained in good faith and on reasonable grounds." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007). The genuine dispute rule "allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable – for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law . . . ." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002); *see also Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th

8

Cir.1994) ("[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability"). An insurer may demonstrate the existence of a genuine dispute by showing that "it relied on opinions from experts while evaluating the insured's claim." *Maynard*, 499 F. Supp. 2d at 1160 (citing *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000) ("The 'genuine dispute' doctrine may be applied where the insurer denies a claim based on the opinions of experts.")).

Here, Allstate demonstrates the existence of – and Myers does not dispute – numerous genuine disputes as to the amount of her claim. For instance, while Myers demanded Allstate pay the cost of a future knee surgery, the independent orthopedic surgeon retained by Allstate found Myers would not "require any future formal treatment for the left knee as it relates to the motor vehicle accident." (SUF ¶¶ 11, 18.) Because Allstate relied on the surgeon's opinion in disallowing this claim, its position was reasonable. *See, e.g.*, *Chateau Chamberay*, 90 Cal. App. 4th at 348-49; *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1293 (2000).[8] Thus, its dispute with Myers over this claim was genuine, and Allstate is entitled to summary judgment under the genuine dispute doctrine. *See Wilson*, 42 Cal. 4th at 723-24.

In opposition, Myers argues that the basis of her bad faith claim is not this genuine dispute over coverage, but rather that "Allstate unreasonably delayed in conducting their

---

[8] To be sure, there are certain circumstances falling outside this general rule where an insurer's reliance on an expert's opinion does not create a genuine dispute – for instance, where the insurer dishonestly selected the expert or the insurer's expert was self-evidently unreasonable. *See Chateau Chamberay*, 90 Cal. App. 4th at 348-49. Myers does not, however, invoke this exception or suggest any of these circumstances were present here.

9

investigation and setting up the Arbitration." (Opp. at 11.) As Allstate notes, however, the evidence is to the contrary.

First, it is undisputed that Allstate sent Myers' counsel a medical records authorization less than a month after the accident, but that Myers' counsel did not return the authorization because it "got lost in the shuffle . . . ." (SGIF ¶ 3-4, 8.) Pursuant to Section 11580.2 of the California Insurance Code, an arbitration proceeding was stayed until 30 days *after* Myers provided the requested authorization. Cal. Ins. Code § 11580.2(o).[9] It is axiomatic that "a bad faith claim cannot be maintained unless policy benefits are due." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990). Myers' failure to provide the requested medical authorization negated her entitlement to the *arbitration*, let alone to any benefits due to her following the arbitration award.[10] *See Morgan v. Allstate Ins. Co.*, No. B237788, 2013 WL 1411831, at *5 (Cal. Ct. App. Apr. 9,

---

[9] Specifically, Section 11580.2 provides:

> If an insured has failed to provide an insurer with . . . medical treatment record releases within 15 days of the insurer's request . . . the insurer may, at any time prior to 30 days before the actual arbitration proceedings commence, request, and the insured shall furnish, . . . medical treatment record releases, and the insurer may require the insured . . . . The . . . medical treatment record releases shall be submitted by the insured within 10 days of request . . . . If the insured fails to comply with the requirements of this subdivision, the actual arbitration proceedings shall be stayed for at least 30 days following compliance by the insured.

Cal. Ins. Code § 11580.2(o).

[10] While Myers argues her failure to provide the requested authorization should not have prevented Allstate from taking other steps to advance the investigation, such as "hiring an attorney earlier," "subpoena[ing] all the medical records that they were totally aware of," or sending "a follow-up . . . requesting the authorization," this ignores the fact that, regardless of whether those steps had been taken, she was not entitled to an arbitration of her dispute with Allstate.

2013) (unpublished) (affirming the trial court's grant of summary judgment where the insurer's efforts to investigate plaintiff's claim were "stymied by plaintiff's refusal to provide the medical authorizations to Allstate so that Allstate could evaluate plaintiff's claim").

Moreover, the undisputed facts reveal no evidence of "dilatory claims handling," as Myers suggests. (*See* Opp. at 12.) Myers argues "the trail of letters sent by [her] attorney to Allstate establishes that there is a triable issue as to whether Allstate acted reasonably during the nearly 1 year time span that elapsed before the Arbitration was finally conducted . . . ." (Opp. at 13.) To the contrary, the undisputed evidence establishes that Myers, not Allstate, bears responsibility for the delays in processing her claim. In February 2013, Allstate asked Myers for certain missing medical records, which Myers provided in March 2013. (SUF ¶¶ 9-10.) In March 2013, Myers' counsel advised Allstate that Myers would require a future knee surgery. (SUF ¶ 11.) In April 2013, Allstate retained its independent orthopedic surgeon and served written discovery on Myers asking for a list of all of her medical providers. (SUF ¶¶ 14-15.) Myers sought an extension of time to respond and provided her responses in June 2013. (SUF ¶ 15.) Allstate then subpoenaed the listed providers and in August 2013 received Myers' complete medical records. (SUF ¶ 16.) That month, Myers' and Allstate's counsel agreed to the December 2013 arbitration date. (SUF ¶ 17.) These facts show only that Allstate timely pursued its investigation of Myers' claims, as it is permitted to do. *See Globe Indem. Co. v. Super. Ct.*, 6 Cal. App. 4th 725, 731 (1992) ("There can be no 'unreasonable delay' until the insurer receives adequate information to process the claim and reach an agreement with the insureds.").

Although Myers purports to dispute this, the only evidence she cites to is the declaration of her counsel, Steven Zwick, in which Zwick states that Myers' case "could have been completely resolved within 6 months of my Demand for Arbitration" and suggests that while Allstate waited for Myers' medical records, it "could have easily hired an attorney earlier than they did instead of waiting 4 months . . . ." (SGIF ¶¶ 16, 18.) As Allstate notes, however, Zwick's statements about Allstate's handling of Myers' claim are inadmissible for numerous reasons, including that he (1) lacks personal knowledge on these topics, (2) impermissibly offers testimony on a legal conclusion, and (3) is not an expert witness in this case.[11] Thus, any dispute purportedly identified by Myers is not material. In the absence of any disputed facts, Allstate is entitled to judgment as a matter of law. *Carlton v. St. Paul Mercury Ins. Co.*, 30 Cal. App. 4th 1450, 1456 (1994) ("While the reasonableness of an insurer's claims handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and but one inference can be drawn from the evidence."); *Chateau Chamberay*, 90 Cal. App. 4th at 350 ("Although an insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind, the question becomes one of law . . . when, because there are no conflicting inferences, reasonable minds could not differ.") (internal alterations and citations omitted).

In sum, the undisputed facts demonstrate that Allstate's reliance on the surgeon's opinion in disallowing Myers' claim for future knee surgery was reasonable. Thus,

---

[11] Zwick elsewhere criticizes the physician's finding that shoulder surgery was unnecessary and describes the reasons Myers became concerned about receiving funds for her medical bills. (SGIF ¶¶ 12, 23.) This testimony, too, is inadmissible for substantially the same reasons.

Allstate's dispute with Myers as to the value of her claim was reasonable, and it is entitled to summary judgment under the genuine dispute doctrine. Furthermore, the undisputed facts demonstrate that Allstate did not unreasonably delay paying any benefits owed to Myers. Accordingly, the Court GRANTS summary judgment in Allstate's favor as to Myers' bad faith claim.

### B.  Punitive Damages Claim

Because the Court grants summary judgment to Allstate on Myers' bad faith claim, it likewise GRANTS summary judgment to Allstate on Myers' request for punitive damages on that claim.

## V.  CONCLUSION

For the foregoing reasons, Allstate's Motion for Summary Judgment is GRANTED. Allstate shall submit a proposed judgment forthwith.

DATED:  June 16, 2015    _____
                             JOSEPHINE L. STATON
                         UNITED STATES DISTRICT JUDGE